DocuSign Envelope ID: D89E3C0A-5864-4115-AD96-C4724975400F

EXECUTION VERSION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES DAVIS, BART PANESSA, and JEFF NIEMEIER, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:17-cv-12188-CCC-JBC |
| Plaintiff, | |
| v. | CLASS ACTION |
| KATANGA MINING LIMITED, JOHNNY BLIZZARD, JACQUES LUBBE, MATTHEW COLWILL, ARISTOTELIS MISTAKIDIS, LIAM GALLAGHER, TIM HENDERSON, IVAN GLASENBERG, AND GLENCORE PLC, | |
| Defendants. | |

## <u>STIPULATION AND AGREEMENT OF SETTLEMENT</u>

This Stipulation and Agreement of Settlement (together with all Exhibits thereto, the "Stipulation"), dated as of March 5, 2021, which is entered into by and among (i) Lead Plaintiff Charles Davis ("Davis") and Named Plaintiffs Bart Panessa and Jeffrey Niemeier ("Plaintiffs"), on behalf of themselves and on behalf of the Settlement Class (as defined herein), and (ii) Katanga Mining Limited ("Katanga" or the "Company"), Johnny Blizzard ("Blizzard"), Jacques Lubbe ("Lubbe"), Matthew Colwill ("Colwill"), Aristotelis Mistakidis ("Mistakidis"), Liam Gallagher ("Gallagher"), Tim Henderson ("Henderson"), Ivan Glasenberg ("Glasenberg"), and Glencore Plc ("Glencore" and collectively, "Defendants"), by an through their undersigned attorneys, state all of the terms of the settlement and resolution of this matter by the Parties and is intended by the Parties to fully and finally release, resolve, remise, and discharge the Released Claims (as defined herein) against the Releasees (as defined herein), subject to the approval of the United States District Court for the District of New Jersey (the "Court").

-1-

DocuSign Envelope ID: D89E3C0A-5864-4115-AD96-C4724975400F

EXECUTION VERSION

Throughout this Stipulation, all terms used with initial capitalization, but not immediately defined, shall have the meanings ascribed to them in Section 1 below.

**WHEREAS:**

### A.    The Action

Davis commenced this Action on November 29, 2017, alleging violations of the Securities Exchange Act of 1934. (Dkt. No. 1).

On January 29, 2018, Davis filed the sole motion for appointment of lead plaintiff and approval of lead counsel. (Dkt. No. 6).  On March 22, 2018, the Court administratively terminated Davis' lead plaintiff motion as no defendants had appeared in the Action and set a call of dismissal pursuant to Fed. R. Civ. P. 4(m) for failure to effectuate service. (Dkt. Nos. 9-10). On March 29, 2018, Davis responded notifying the Court that Defendants resided in foreign countries and thus, the 90-day limitation of Rule 4(m) was not applicable. Davis also informed the Court that service of the initial complaint was underway through the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, November 15, 1965 (the "Hague") (Dkt. No. 11). The Court withdrew the Notice of Call for Dismissal on May 2, 2018.

On June 5, 2018, Davis and Defendants Katanga, Blizzard, Lubbe, and Colwill entered into a stipulation regarding the scheduling of an amended complaint and filing of answer, which the Court so-ordered. (Dkt. No. 19).

On July 31, 2018 and on November 2, 2018, Davis filed status reports to keep the Court updated on the status of serving the foreign defendants. (Dkt. Nos. 24, 29).

On February 27, 2019, Davis filed an Unopposed Motion for Issuance of a Request for International Judicial Assistance (Letters Rogatory) (Dkt. No. 31). The Court granted this motion

EXECUTION VERSION

on March 1, 2019. (Dkt. No. 32). Davis filed the copies of Letter of Request for Judicial Assistance on March 5, 2019. (Dkt. No. 33).

On June 21, 2019, Davis filed the Notice of Motion and Motion for Alternative Service, requesting that he be permitted to effectuate service on Defendants Lubbe and Blizzard by serving their U.S.-based counsel. (Dkt. No. 34). Magistrate Judge Clark granted the motion for alternative service on August 5, 2019. (Dkt. No. 39).

On August 14, 2019, after counsel for Defendants Colwill, Blizzard, and Lubbe filed notices of appearance, Davis filed his renewed motion for appointment as lead plaintiff and approval of his selection of counsel. (Dkt. No. 44). On March 13, 2020, the Court appointed Davis as Lead Plaintiff and appointed The Rosen Law Firm, P.A. as Lead Counsel. (Dkt. No. 53).

On April 11, 2020, Plaintiffs filed the First Amended Class Action Complaint for Violation of the Federal Securities Laws (Dkt. No. 54). The operative Corrected First Amended Class Action Complaint for Violation of the Federal Securities Laws ("Amended Complaint") was filed on July 22, 2020. (Dkt. No. 71).

On July 31, 2020, Defendants filed two motions to dismiss (Dkt. Nos. 76, 77), which Plaintiffs opposed on November 20, 2020. (Dkt. No. 83).

On December 23, 2020, the Parties notified the Court that they reached a settlement and executed a term sheet. The Parties requested that the Court stay the proceedings while the Parties finalize a stipulation and agreement of settlement and for Plaintiffs to move for preliminary approval. (Dkt. No. 85).

**B.     The Settlement**

Prior to filing of the Defendants' motions to dismiss, the Parties began settlement negotiations. After a series of telephonic and email communications and negotiations, including

DocuSign Envelope ID: D89E3C0A-5864-4115-AD96-C4724975400F

EXECUTION VERSION

exchange of information regarding calculation of damages and related expert opinions, the Parties reached a settlement and executed a term sheet on December 23, 2020.

This Stipulation memorializes the agreement between the Parties to fully and finally settle the Action and to fully release all Released Claims against Releasees with prejudice in return for the consideration specified herein.

### C.     Defendants' Denial of Wrongdoing and Liability

Throughout the course of the Action, and in this Stipulation, Defendants have denied and continue to deny each, any and all allegations of wrongdoing, fault, liability or damage whatsoever that have or could have been asserted in the Action. Defendants have also denied and continue to deny, *inter alia*, the allegations and claims that have been or could have been asserted by Plaintiffs, as well as the allegations that Plaintiffs and the Settlement Class have suffered damages and that Plaintiffs and the Settlement Class were harmed by the conduct alleged in the Action. Defendants continue to believe the claims asserted against them in the Action are without merit and that the Action itself should not be certified as a class action for purposes of trial and adjudication of liability and damages. Defendants have not conceded or admitted any wrongdoing or liability, are not doing so by entering into this Stipulation, and disclaim any and all wrongdoing and liability whatsoever.

Defendants have agreed to enter into this Stipulation solely to avoid the uncertainties, burden, and expense of further litigation and to put the Released Claims to rest finally and forever. Nothing in this Stipulation shall be construed as or deemed evidence supporting an admission by any of the Releasees with respect to any of Plaintiffs' allegations or claims, or of any wrongdoing, fault, liability or damages whatsoever.

EXECUTION VERSION

### D.      Plaintiffs' Claims and Benefits of Settlement

Plaintiffs believe that the claims asserted in the Action have merit. Plaintiffs, however, recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through trial and appeals. Plaintiffs have also taken into account the uncertain outcome and the risk of any litigation. In particular, Plaintiffs have considered the inherent problems of proof and possible defenses to the federal securities law violations asserted in the Action, including the defenses that have been or could be asserted by Defendants during the litigation, motion for summary judgment, motion for class certification, and trial. Plaintiffs have therefore determined that the Settlement set forth in this Stipulation is fair, adequate, reasonable, and in the best interests of the Settlement Class.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among the Plaintiffs (on behalf of themselves and each of the Settlement Class Members) and Defendants (by and through their respective undersigned counsel) that, subject to the approval of the Court, in consideration of the benefits flowing to the Parties from the Settlement set forth herein, the Action and the Released Claims as against the Releasees shall be finally and fully compromised, settled and released, the Action shall be dismissed fully, finally and with prejudice, and the Released Claims shall be finally and fully released as against the Releasees, upon and subject to the terms and conditions of this Stipulation, as follows:

### 1.    Definitions

In addition to the terms defined above, the following capitalized terms, used in this Stipulation, shall have the meanings specified below:

**1.1.** "Action" means the putative securities class action *Charles Davis, et al. v. Katanga Mining Limited, et al.,* Case No. 2:17-cv-12188-CCC-JBC (D.N.J.).

EXECUTION VERSION

1.2.     "Administrative Costs" means all costs and expenses associated with providing

notice of the Settlement to the Settlement Class and otherwise administering or carrying out the

terms of the Settlement. Such costs may include, without limitation: escrow agent costs, the costs

of publishing the Summary Notice, the costs of printing and mailing, and/or emailing of the Notice

and Proof of Claim, as directed by the Court, and the costs of allocating and distributing the Net

Settlement Fund (as defined in paragraph 7.2) to the Authorized Claimants. Such costs do not

include legal fees.

1.3.     "Authorized Claimant" means any Settlement Class Member who is a Claimant and

whose claim for recovery has been allowed pursuant to the terms of this Stipulation, the exhibits

hereto, and any order of the Court.

1.4.     "Award to Plaintiffs" means the requested reimbursement to Plaintiffs for their

reasonable costs and expenses (including lost wages) directly related to Plaintiffs' representation

of the Settlement Class in the Action.

1.5.     "Business Day" means any day except Saturday or Sunday or any other day on

which national banks are authorized by law or executive order to close in the State of New Jersey.

1.6.     "Claimant" means any Settlement Class Member who files a Proof of Claim in such

form and manner, and within such time, as the Court shall prescribe.

1.7.     "Claims" means any and all manner of claims, debts, demands, controversies,

obligations, losses, costs, interest, penalties, fees, expenses, rights, duties, judgments, sums of

money, suits, contracts, agreements, promises, damages, actions, causes of action and liabilities,

of every nature and description in law or equity (including, but not limited to, any claims for

damages, whether compensatory, special, incidental, consequential, punitive, exemplary, or

otherwise, injunctive relief, declaratory relief, recession or recessionary damages, interest,

DocuSign Envelope ID: D89E3C0A-5954-4115-AD96-C4724975400F

EXECUTION VERSION

attorneys' fees, expert or consulting fees, costs, or expenses), accrued or unaccrued, known or unknown, arising under federal, state, common, administrative, or foreign law, or any other law, rule, or regulation.

**1.8.** "Claims Administrator" means Strategic Claims Services ("SCS"), which shall administer the Settlement.

**1.9.** "Defendants" means Katanga Mining Limited, Johnny Blizzard, Jacques Lubbe, Matthew Colwill, Aristotelis Mistakidis, Liam Gallagher, Tim Henderson, Ivan Glasenberg, and Glencore Plc.

**1.10.** "Defense Counsel" means Paul, Weiss, Rifkind, Wharton & Garrison LLP, Wilmer Cutler Pickering Hale and Dorr LLP, Hartmann Doherty Rosa Berman & Bulbulia, LLC, and Brown & Connery, LLP.

**1.11.** "Effective Date" shall have the meaning set forth in ¶ 10.2 of this Stipulation.

**1.12.** "Escrow Account" means an interest-bearing escrow account established by the Escrow Agent. The Escrow Account shall be managed by the Escrow Agent, subject to the Court's supervisory authority, for the benefit of Plaintiffs and the Settlement Class in accordance with the terms of the Stipulation and any order of the Court.

**1.13.** "Escrow Agent" means SCS or its appointed agents. The Escrow Agent shall perform the duties as set forth in this Stipulation and any order of the Court.

**1.14.** "Final," when referring to the Final Judgment, means exhaustion of all possible appeals, meaning (i) if no appeal or request for review is filed, the day after the date of expiration of any time for appeal or review of the Final Judgment, and (ii) if an appeal or request for review is filed, the day after the date the last-taken appeal or request for review is dismissed, or the Final Judgment is upheld on appeal or review in all material respects, and is not subject to further review

EXECUTION VERSION

on appeal or by certiorari or otherwise; provided, however, that no order of the Court, or modification or reversal on appeal or any other order, relating solely to the amount, payment, or allocation of attorneys' fees and expenses or to the Plan of Allocation shall constitute grounds for cancellation or termination of this Settlement or affect its terms, including the release in ¶ 6.1 hereof, or shall affect or delay the date on which the Final Judgment becomes Final.

     **1.15.**   "Final Judgment" means the order and final judgment to be entered by the Court finally approving the Settlement and dismissing the Action, materially in the form attached hereto as Exhibit B.

     **1.16.**   "Insurer(s)" means the insurers under director and officer liability policies under which Defendants were covered, for the period during the Settlement Class Period.

     **1.17.**   "Lead Counsel" means The Rosen Law Firm, P.A.

     **1.18.**   "Lead Plaintiff" means Charles Davis as identified in the Order. (Dkt. No. 53).

     **1.19.**   "Net Settlement Fund" means the Settlement Fund, less: (i) the Fee and Expense Awards (as defined below); (ii) Administrative Costs; (iii) Taxes and Tax Expenses; (iv) any Award to Plaintiffs; and (v) other fees and expenses authorized by the Court.

     **1.20.**   "Notice" means collectively, the Notice of Pendency and Proposed Settlement of Securities Class Action ("Long Notice"), the Summary Notice of Pendency and Proposed Securities Class Action Settlement ("Summary Notice"), and the Postcard Notice, which are to be made available to Settlement Class Members substantially in the forms attached hereto as Exhibits A-1, A-3, and A-4 on the Claims Administrator's website and/or mailed to Settlement Class Members.

     **1.21.**   "Opt-Out" means any one of, and "Opt-Outs" means all of, any Persons who otherwise would be Settlement Class Members and have timely and validly requested exclusion

DocuSign Envelope ID: D89E3C0A-5864-4115-AD96-C4724975400E

EXECUTION VERSION

from the Settlement Class in accordance with the provisions of the Preliminary Approval Order

and the Notice given pursuant thereto.

1.22.    "Party" means any one of, and "Parties" means collectively, Plaintiffs (on behalf of

themselves and the Settlement Class) and Defendants.

1.23.    "Person" means an individual, corporation, fund, limited liability corporation,

professional corporation, limited liability partnership, partnership, limited partnership, association,

joint stock company, estate, legal representative, trust, unincorporated association, government or

any political subdivision or agency thereof, and any business or legal entity and their spouses,

heirs, predecessors, successors, representatives, or assigns.

1.24.    "Plan of Allocation" means a plan or formula for allocating the Settlement Fund to

Authorized Claimants after payment of Administrative Costs, Taxes and Tax Expenses, and such

attorneys' fees, costs, and expenses as may be awarded by the Court. Any Plan of Allocation is

not a condition to the effectiveness of this Stipulation, and the Releasees shall have no

responsibility or liability with respect thereto.

1.25.    "Preliminary Approval Order" means the proposed order preliminarily approving

the Settlement and directing notice thereof to the Settlement Class Members substantially in the

form attached hereto as Exhibit A.

1.26.    "Proof of Claim" means the Proof of Claim and Release Form to be submitted by

Claimants, substantially in the form attached hereto as Exhibit A-2.

1.27.    "Released Claims" means any and all Claims (including Unknown Claims as

defined in ¶ 1.37), whether brought directly or indirectly, that (a) have been asserted in the Action

or (b) could have been asserted in this Action or (c) could in the future be asserted in any forum,

by Plaintiffs, any member of the Settlement Class, or their successors, assigns, executors,

EXECUTION VERSION

administrators, representatives, attorneys, and agents, in their capacities as such, which arise out

of, are based upon, or relate to in any way to (i) any of the allegations, acts, transactions, facts,

events, matters, occurrences, representations or omissions involved, set forth, alleged or referred

to in this Action or (ii) the purchase, acquisition, holding, sale, or disposition of Katanga securities

traded on or through the U.S. OTC Markets by members of the Settlement Class. Notwithstanding

the foregoing, "Released Claims" does not include claims to enforce the terms of this Stipulation

or orders or judgments issued by the Court in connection with this Settlement.

    **1.28.**   "Releasees" includes: (a) all Defendants; (b) the present and former parents,

subsidiaries, divisions, and affiliates of Katanga and Glencore plc ("Related Entities"); (c) the

present and former employees, officers and directors of the defendants and Related Entities; (d)

the present and former attorneys, insurers, and agents of the defendants and Related Entities; and

(e) the predecessors, heirs, successors and assigns of the defendants and Related Entities.

    **1.29.**   "Releasing Parties" means jointly and severally, individually and collectively,

Plaintiffs, any member of the Settlement Class, or their successors, assigns, executors,

administrators, representatives, attorneys, and agents, in their capacities as such.

    **1.30.**   "Settlement" means the settlement contemplated by this Stipulation.

    **1.31.**   "Settlement Amount" means the sum of $1,000,000 (One Million U.S. Dollars).

The Settlement Amount includes all Administrative Costs, Lead Counsel's attorneys' fees and

expenses (as allowed by the Court), Award to Plaintiffs (as allowed by the Court), Settlement Class

Member benefits, as well as any other costs, expenses, or fees of any kind whatsoever associated

with the Settlement.

    **1.32.**   "Settlement Class" means all persons or entities who purchased or otherwise

acquired the publicly traded securities of Katanga on or through the U.S. OTC Markets from

DocuSign Envelope ID: D90E3C0A-5854-4115-AB96-647249754005

EXECUTION VERSION

February 11, 2016, through November 7, 2019, both dates inclusive. Excluded from the Settlement Class are: the current and former defendants in the Action; the officers and directors of Katanga; members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which defendants have or had a controlling interest. Any member of the Settlement Class who validly and timely requests exclusion will also be excluded.

**1.33.**   "Settlement Class Member" means any one of, and "Settlement Class Members" means all of, the members of the Settlement Class.

**1.34.**   "Settlement Class Period" means the period between February 11, 2016 and November 7, 2019, both dates inclusive.

**1.35.**   "Settlement Fund" means all funds transferred to the Escrow Account pursuant to this Stipulation and any interest or other income earned thereon.

**1.36.**   "Settlement Hearing" means the hearing at or after which the Court will make a final decision pursuant to Rule 23 of the Federal Rules of Civil Procedure as to whether the Settlement set forth in the Stipulation is fair, reasonable, and adequate, and therefore, should receive final approval from the Court.

**1.37.**    "Unknown Claims" includes any claims which any Plaintiff, Settlement Class Member, or Defendant does not know or suspect to exist in his, her, or its favor at the time of the settlement, even if such claim if known by him, her, or it might have affected his, her, or its decisions with respect to this settlement. The Parties expressly acknowledge, and the Releasing Parties by operation of the Judgment—shall have, and shall be deemed to have expressly waived and relinquished any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or any other jurisdiction, or principle of common law that is, or is similar, comparable, or equivalent to California Civil Code ¶ 1542, which provides:

DocuSign Envelope ID: D90E3C0A-5854-4115-AB96-64724975400E

EXECUTION VERSION

> *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

Plaintiffs or Releasing Parties may hereafter discover facts, legal theories, or authorities in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but Plaintiffs shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have settled and released, and upon the Effective Date and by operation of the Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities. Plaintiffs expressly acknowledge, and the Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and a material element of the Settlement.

**2.     The Settlement Consideration**

2.1.    In consideration of the full and final release, settlement and discharge of all Released Claims against the Releasees, within fifteen (15) Business Days after the Court's entry of the Preliminary Approval Order, Katanga, on behalf of all Defendants, shall either transfer or cause its Insurer(s) to transfer the Settlement Amount ($1,000,000), by wire transfer or check, to the Escrow Account, provided that the Escrow Agent or Lead Counsel has provided Katanga's counsel with complete wire and transfer information and instructions and a completed Form W-9 at least seven (7) Business Days prior to the date of such payment.

2.2.    Under no circumstances will Defendants or their Insurer(s) be required to pay, or cause payment of, more than the Settlement Amount pursuant to this Stipulation and the Settlement for any reason whatsoever, including, without limitation, as compensation to any Settlement Class

EXECUTION VERSION

Member, as payment of Administrative Costs, as payment of attorneys' fees and expenses awarded by the Court, in payment of any fees or expenses incurred by any Settlement Class Member or Lead Counsel, or as interest on the Settlement Amount of any kind and relating to any time period (including prior to the payment of the Settlement Amount into the Escrow Account).

**3.     Handling and Disbursement of Funds by the Escrow Agent**

**3.1.**     No monies will be disbursed from the Settlement Fund until after the Effective Date except:

    **(a)**     As provided in ¶ 3.4 below;

    **(b)**     As provided in ¶ 8.2 below;

    **(c)**     As provided in ¶ 10.8 below, if applicable; and

    **(d)**     To pay Taxes and Tax Expenses (as defined in ¶ 4.1 below) on the income earned by the Settlement Fund. Taxes and Tax Expenses shall be paid out of the Settlement Fund and shall be considered to be a cost of administration of the Settlement and shall be timely paid by the Escrow Agent without prior Order of the Court.

**3.2.**     The Escrow Agent shall invest the Settlement Fund in short term instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. The Escrow Agent shall bear all responsibility and liability for managing the Escrow Account and cannot assign or delegate its responsibilities without approval of the Parties. Defendants, their counsel, and the other Releasees shall have no responsibility for, interest in, or any liability whatsoever with respect to any investment or management decisions executed by the Escrow Agent. The Settlement Fund shall

DocuSign Envelope ID: D80E3C0A-5854-4115-AB96-647249754005

EXECUTION VERSION

bear all risks related to the investments of the Settlement Amount in accordance with the guidelines set forth in this ¶ 3.2.

**3.3.**     The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of Defense Counsel.

**3.4.**     At any time after the Court grants preliminary approval of the Settlement, the Escrow Agent may, without further approval from Defendants or the Court, disburse at the direction of Lead Counsel up to $100,000 (One Hundred Thousand U.S. Dollars) from the Settlement Fund prior to the Effective Date to pay Administrative Costs. After the Effective Date, additional amounts, up to $50,000 (Fifty Thousand Dollars), may be transferred from the Settlement Fund to pay for any necessary additional Administrative Costs without further order of the Court.

**4.     Taxes**

**4.1.**     The Parties agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. In addition, Lead Counsel or their designee shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 4.1, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of Lead Counsel or their designee to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

       **(a)**     For purposes of § 1.468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation § 1.468B-2(k)(3) promulgated thereunder, the

DocuSign Envelope ID: D90E3C0A-5854-4115-AB96-547249754005

EXECUTION VERSION

"administrator" shall be Lead Counsel or their designee. Lead Counsel or their designee shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in this ¶ 4.1) shall be consistent with this ¶ 4.1 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund.

(b)     All Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon Defendants or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes ("Taxes"), and all expenses and costs incurred in connection with the operation and implementation of this ¶ 4.1 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses or penalties relating to filing (or failing to file) the returns described in this ¶ 4.1) ("Tax Expenses"), shall be paid out of the Settlement Fund, as appropriate. Defendants, their counsel, and the other Releasees shall have no liability or responsibility for the Taxes or the Tax Expenses. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid out of the Settlement Fund without prior order from the Court. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any

-15-

DocuSign Envelope ID: D80E3C0A-5854-4115-AB96-647249754005

EXECUTION VERSION

amounts that may be withheld under Treasury Regulation § 1.468B-2(1)(2)). Defendants, their counsel, and the other Releasees shall have no responsibility for, interest in, or any liability whatsoever with respect to the foregoing provided in this ¶ 4.1.  The Parties agree to cooperate with each other, and their tax attorneys and accountants, to the extent reasonably necessary to carry out the provisions of this ¶ 4.1.

### 5.    Preliminary Approval Order, Notice Order, and Settlement Hearing

**5.1.**    As soon as practicable after execution of this Stipulation, Lead Counsel shall submit this Stipulation and its exhibits to the Court and shall apply for preliminary approval of the Settlement set forth in this Stipulation, entry of a preliminary approval order, and approval for the dissemination of notice. The Preliminary Approval Order to be submitted to the Court shall contain the exhibits substantially in the form set forth in: (i) the Long Notice (Exhibit A-1); (ii) the Proof of Claim and Release (Exhibit A-2); (c) Summary Notice (Exhibit A-3); and (d) the Postcard Notice (Exhibit A-4). The Notice shall include the general terms of the Settlement and the provisions of the Plan of Allocation and shall set forth the procedure by which recipients of the Notice may object to the Settlement or the Plan of Allocation or request to be excluded from the Settlement Class. The date and time of the Settlement Hearing shall be added to the Notice and Summary Notice before they are disseminated or otherwise provided to Settlement Class Members. Defendants shall not object to, or have any responsibility for, Lead Counsel's proposed Plan of Allocation.

**5.2.**    At the time of the submission described in ¶ 5.1 hereof, the Parties, through their counsel, shall jointly request that, after the Notice is provided and the Settlement Class Members are notified of the Settlement, the Court hold the Settlement Hearing and (i) approve the Settlement

DocuSign Envelope ID: D90E3C0A-5854-4115-AB96-647249754005

EXECUTION VERSION

as set forth herein and (ii) enter a final order and judgment substantially in the form of Exhibit B hereto, as promptly after the Settlement Hearing as possible.

**5.3.** No later than ten (10) calendar days following the filing of this Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 et seq. ("CAFA"). At least seven (7) calendar days before the Settlement Hearing, Defendants shall cause to be served on Lead Counsel and filed with the Court an affidavit or declaration regarding compliance with the CAFA notice requirements.

**6.      Releases and Covenants Not to Sue**

**6.1.** Upon the Effective Date, the Releasing Parties, on behalf of themselves and any other Person claiming (now or in the future) through or on behalf of them, regardless of whether any such Releasing Party ever seeks or obtains by any means, including without limitation by submitting a Proof of Claim, any disbursement from the Settlement Fund, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Releasees and shall have covenanted not to sue the Releasees with respect to all such Released Claims, and shall be permanently barred and enjoined from asserting, commencing, prosecuting, instituting, assisting, instigating, or in any way participating in the commencement or prosecution of any action or other proceeding, in any forum, asserting any Released Claim, in any capacity, against any of the Releasees, including Defense Counsel. Nothing contained herein shall, however, bar the Releasing Parties from bringing any action or claim to enforce the terms of this Stipulation or the Final Judgment.

**6.2.** Upon the Effective Date, Defendants shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, Lead Counsel, and each of their respective business entities, affiliates, members,

DocuSign Envelope ID: D80E3C0A-5854-4115-AB96-647249754005

EXECUTION VERSION

officers, employees, agents, heirs, executors, administrators, predecessors, trustees, administrators, successors, assigns and assignees (all of the foregoing in their capacities as such), and the Settlement Class from all claims relating to the institution, prosecution, or settlement of the Action and shall be permanently enjoined from prosecuting the Defendants' Released Claims against such persons. Nothing contained herein shall, however, bar the Defendants from bringing any action or claim to enforce the terms of this Stipulation or the Final Judgment.

7. **Administration and Calculation of Claims, Final Awards and Supervision and Distribution of the Settlement Fund**

7.1.    Under the supervision of Lead Counsel, acting on behalf of the Settlement Class, and subject to such supervision and direction of the Court as may be necessary or as circumstances may require, the Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund (as defined below) to Authorized Claimants.

7.2.    The Settlement Fund shall be applied as follows:

(a)    To pay the Taxes and Tax Expenses described in ¶ 4.1 above;

(b)    To pay Administrative Costs;

(c)    To pay Lead Counsel's attorneys' fees with interest and expenses and payment to the Plaintiffs for reimbursement of their time and expenses (the "Fee and Expense Award"), to the extent allowed by the Court; and

(d)    To distribute the balance of the Settlement Fund, that is, the Settlement Fund less the items set forth in ¶¶ 7.2(a), (b), and (c) hereof (the "Net Settlement Fund"), plus all accrued interest, to the Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

7.3.    Upon and after the Effective Date, the Net Settlement Fund shall be distributed to Authorized Claimants in accordance with the terms of the Plan of Allocation set forth in the Long Notice and any orders of the Court.

7.4.    This is not a claims-made settlement, and if all conditions of the Stipulation are satisfied and the Final Judgment becomes Final, no portion of the Settlement Fund will be returned to any of the Defendants. Defendants, their counsel, and the other Releasees shall have no responsibility for, involvement in, interest in, or liability whatsoever with respect to the investment or distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith. No Person shall have any claims against Lead Counsel, the Claims Administrator or any other agent designated by Lead Counsel based on distribution determinations or claim rejections made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or orders of the Court. Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal or technical defects in any Proofs of Claim filed, where doing so is in the interest of achieving substantial justice.

7.5.    It is understood and agreed by the Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a condition of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation. Any order or proceedings relating to the Plan of Allocation, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate

EXECUTION VERSION

to modify, terminate, or cancel this Stipulation, or affect or delay the finality of the Final Judgment and the releases contained therein, or any other orders entered pursuant to this Stipulation.

      **7.6.**    No later than ten (10) business days after the date of entry of the Preliminary Approval Order, Katanga, at no cost to Plaintiffs or Lead Counsel, shall provide and/or cause its transfer agent to provide to Lead Counsel such information as is reasonably available to Defendants regarding the record owners of Katanga securities which may be included in the Settlement Class in a usable electronic format, such as an Excel spreadsheet ("Settlement Class Information"). If in the transfer agent's possession, the Settlement Class Information should include email addresses of record owners of Katanga securities in the Settlement Class. The Parties acknowledge that any information provided to Lead Counsel by Katanga pursuant to this paragraph shall be treated as confidential and will be used by Lead Counsel and the Claims Administrator solely to disseminate notice, apprise Settlement Class Members of the Settlement, and/or implement the Settlement.

      **7.7.**    If any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants and who receive at least a $10.00 payment; (ii) second, to pay any additional Administration Costs incurred in administering the Settlement; and (iii) finally, to make a second distribution to Authorized Claimants who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net

EXECUTION VERSION

Settlement Fund and in making this second distribution, if such second distribution is economically feasible. If any funds shall remain in the Net Settlement Fund six months after such re-distribution, then such balance shall be contributed to a non-sectarian charity or any not-for-profit successor of it chosen by Lead Counsel, with the approval of the Court.

### 8. Lead Counsel's Attorneys' Fees and Reimbursement of Expenses

8.1. Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Settlement Fund to Lead Counsel for: (i) an award of attorneys' fees with interest from the Settlement Fund; (ii) reimbursement of actual costs and expenses, including the fees and expenses of any experts or consultants, incurred in connection with prosecuting the Action; and (iii) the Award to Plaintiffs. Defendants shall take no position with respect to the Fee and Expense Application.

8.2. Except as otherwise provided in this paragraph, the attorneys' fees and expenses awarded by the Court shall be paid to Lead Counsel from the Settlement Fund immediately after the Court enters the Final Judgment and an order awarding such fees and expenses, notwithstanding any objections to or appeals of such order or of the Final Judgment. In the event that the Effective Date does not occur, or the Final Judgment is reversed or modified in any way that affects the award of attorneys' fees and expenses, or the Stipulation is terminated for any other reason, then Lead Counsel shall be jointly and severally obligated to refund to the Escrow Account, within ten (10) Business Days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction, either the full amount of the fees and expenses or an amount consistent with any modification of the Final Judgment with respect to the Fee and Expense Award, including accrued interest at the same rate as is earned by the Settlement Fund. Lead Counsel agrees that the law firms and its partners and/or shareholders are subject to jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph, and they shall be jointly and severally liable

DocuSign Envelope ID: D90E3C0A-5854-4115-AB96-64724975400F

EXECUTION VERSION

for repayment of all attorneys' fees and expenses awarded by the Court. Furthermore, without limitation, Lead Counsel agree that the Court may, upon application of Defendants, summarily issue orders, including, without limitation, judgments and attachment orders and may make appropriate findings of or sanctions for contempt against the firms should they fail timely to repay fees and expenses pursuant to this paragraph. Any Award to Plaintiffs shall not be paid from the Settlement Fund until after the Effective Date.

8.3.     The procedure for, and allowance or disallowance by the Court of, the Fee and Expense Application are not conditions of the Settlement set forth in this Stipulation and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Stipulation. Any order or proceeding relating to the Fee and Expense Application, or any objection to, motion regarding, or appeal from any order or proceeding relating thereto or reversal or modification thereof, shall not operate to modify, terminate, or cancel this Stipulation, or affect or delay the finality of the Final Judgment or the releases contained therein or any other orders entered pursuant to this Stipulation

8.4.     Any award of attorneys' fees and interest and/or expenses to Lead Counsel or Award to Plaintiffs shall be paid solely from the Settlement Fund and shall reduce the settlement consideration paid to the Settlement Class accordingly. No Releasee shall have any responsibility for payment of Lead Counsel's attorneys' fees and interest, expenses, or other Award to Plaintiffs beyond the obligation of Defendant to cause the funding of the Settlement Amount as set forth in ¶ 2.1 above. The Releasees shall have no responsibility for, and no liability whatsoever with respect to, any payments to Lead Counsel, Plaintiffs, the Settlement Class and/or any other Person who receives payment from the Settlement Fund.

EXECUTION VERSION

## 9.      Class Certification

9.1.    In the Final Judgment, the Settlement Class shall be certified for purposes of this Settlement, but in the event that the Final Judgment does not become Final or the Settlement fails to become effective for any reason, all Parties reserve all their rights on all issues, including class certification. For purposes of this settlement only, in connection with the Final Judgment, Defendants shall consent to (i) the appointment of Plaintiffs as the class representatives, (ii) the appointment of Lead Counsel as class counsel, and (iii) the certification of the Settlement Class pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

## 10.      Conditions of Settlement, Effect of Disapproval, Cancellation or Termination

10.1.    Plaintiffs, on behalf of the Settlement Class, and Defendants shall each have the right to terminate the Settlement and Stipulation by providing written notice of his or its election to do so ("Termination Notice") to all other Settling Parties within seven (7) Business Days of any of the following:

(i)      entry of a Court order declining to enter the Preliminary Approval Order in any material respect;

(ii)      entry of a Court order refusing to approve this Stipulation in any material respect;

(iii)      entry of a Court order declining to enter the Final Judgment in any material respect;

(iv)      entry of a Court order refusing to dismiss the Action with prejudice;

(v)      entry of an order by which the Final Judgment is modified or reversed in any material respect by any appeal or review; and

(vi)      failure on the part of any Party to abide, in material respect, with the terms of this Stipulation.

DocuSign Envelope ID: D80E3C0A-5854-4145-AB96-64724975400F

EXECUTION VERSION

In the absence of any of the events enumerated above in this ¶ 10.1 or Defendants' exercise of their right to terminate pursuant to ¶ 10.4, no Party shall have the right to terminate the Stipulation for any reason.

    **10.2.**  The Effective Date of this Stipulation ("Effective Date") shall not occur unless and until each of the following events occurs, and it shall be the date upon which the last in time of the following events occurs:

        **(a)**    Defendants have not exercised their option to terminate the Settlement pursuant to ¶ 10.4;

        **(b)**    The Court has entered the Preliminary Approval Order attached hereto as Exhibit A or an order containing materially the same terms;

        **(c)**    The sum of $1,000,000 (One Million U.S. Dollars) has been paid into the Escrow Account, as set forth in ¶ 2.1 above;

        **(d)**    The Court has approved the Settlement, following notice to the Settlement Class Members and the Settlement Hearing, and has entered the Final Judgment;

        **(e)**    The Final Judgment has become Final as defined in ¶ 1.14; and

        **(f)**    The Action has been dismissed with prejudice.

    **10.3.**    Upon the occurrence of the Effective Date, any and all interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, except as set forth in this Stipulation.

    **10.4.**    If prior to Final Judgment, Persons who otherwise would be Settlement Class Members have filed with the Court valid and timely requests for exclusion from the Settlement Class in accordance with the provisions of the Preliminary Approval Order and the notice given

EXECUTION VERSION

pursuant thereto ("Opt-Outs"), and such Persons in the aggregate purchased securities during the
Settlement Class Period in an amount greater than the amount specified in a separate Confidential
Supplemental Agreement between the Parties (the "Supplemental Agreement"), then Defendants
shall have, each in his or its sole and absolute discretion, the option to terminate this Stipulation
and Settlement in strict accordance with the requirements and procedures set forth in the
Supplemental Agreement (hereinafter the "Supplemental Termination Option"). The
Supplemental Agreement shall not be filed with the Court unless and until a dispute among the
Parties concerning its interpretation or application arises.

10.5.    Defendants shall not have the right to terminate the Stipulation if the Settlement
Amount is not paid pursuant to ¶ 2.1 (other than in accordance with ¶ 10.4). None of the Parties,
or any of them, shall have any obligation whatsoever to proceed under any terms other than those
provided for and agreed herein. If any Party engages in a material breach of the terms hereof, any
other Party, provided that he, she, or it is in substantial compliance with the terms of this
Stipulation, may terminate this Stipulation on notice to all the Parties.

10.6.    In the event the Stipulation shall be terminated, or be canceled, or shall not become
effective for any reason, the Parties shall be restored to their respective positions in the Action
immediately prior to March 5, 2021, and they shall proceed in all respects as if the Stipulation had
not been executed and the related orders had not been entered, and in that event all of their
respective claims and defenses as to any issue in the Action and shall be preserved without
prejudice.

10.7.    In the event that the Stipulation is not approved by the Court or the Settlement set
forth in this Stipulation is terminated or fails to become effective in accordance with its terms, the
terms and provisions of this Stipulation, except as otherwise provided herein, shall have no further

DocuSign Envelope ID: D90E3C0A-5854-4115-AB96-64724975400E

EXECUTION VERSION

force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

**10.8.**    In the event that the Stipulation shall be terminated, or be canceled, or shall not become effective for any reason, within seven (7) Business Days (except as otherwise provided in the Supplemental Agreement) after the occurrence of such event, the Settlement Fund (less taxes already paid and any Administrative Costs which have either been disbursed or are determined to be chargeable) shall be refunded by the Escrow Agent to the entity or entities which paid the Settlement Fund, in proportion to their contribution to the Settlement Fund, plus accrued interest attributable to that amount by check or wire transfer pursuant to written instructions from said entity or entities. At the request of said entity or entities the Escrow Agent or their designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to said entity or entities pursuant to written direction received from said entity or entities.

**10.9.**    No order of the Court, or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the Fee and Expense Application shall constitute grounds for cancellation or termination of the Stipulation.

**11.    No Admission of Liability or Wrongdoing**

**11.1.**    The Parties covenant and agree that neither this Stipulation, nor the fact nor any terms of the Settlement, nor any communication relating thereto, nor the Supplemental Agreement, is evidence, or an admission, presumption or concession by any Party, or their counsel, any Settlement Class Member, or any of the Releasees, of any fault, liability or wrongdoing whatsoever, as to any facts or claims alleged or that have been or could have been asserted in the

DocuSign Envelope ID: D90E3C0A-5854-4115-AB96-C4724975400F

EXECUTION VERSION

Action, or in any other actions or proceedings, or as to the validity or merit of any of the claims or defenses alleged or that have been or could have been asserted in any such action or proceeding. This Stipulation is not a finding or evidence of the validity or invalidity of any claims or defenses in the Action, any wrongdoing by any Party, Settlement Class Member, or any of the Releasees, or any damages or injury to any Settling Party, Settlement Class Member, or any Releasees. Neither this Stipulation, nor the Supplemental Agreement, nor any of the terms and provisions of this Stipulation or the Supplemental Agreement, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to herein or therein, nor the Settlement, nor the fact of the Settlement, nor the Settlement proceedings, nor any statement in connection therewith, (a) shall (i) be argued to be, used or construed as, offered or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts or omissions on the part of any Releasee, or of any infirmity of any defense, or of any damages to Plaintiffs or any other Settlement Class Member, or (ii) otherwise be used to create or give rise to any inference or presumption against any of the Releasees concerning any fact or any purported liability, fault, or wrongdoing of the Releasees or any injury or damages to any person or entity, or (b) shall otherwise be admissible, referred to or used in any proceeding of any nature, for any purpose whatsoever; provided, however, that the Stipulation, the Supplemental Agreement, and the Final Judgment may be introduced in any proceeding, whether in the Court or otherwise, as may be necessary to enforce the Settlement or Supplemental Agreement or Final Judgment, or as otherwise required by law.

DocuSign Envelope ID: D80E3C0A-5854-4115-AB96-64724975400E

EXECUTION VERSION

### 12.    Miscellaneous Provisions

**12.1.**    Except in the event of the filing of a Termination Notice pursuant to ¶¶ 10.1, 10.2, 10.3, 10.5 or 10.6 of this Stipulation or termination notice in accordance with the Supplemental Agreement, the Parties shall take all actions necessary to consummate this agreement; and agree to cooperate with each other to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation.

**12.2.**    The Parties and their respective counsel represent that they will not encourage or otherwise influence (or seek to influence) any Settlement Class Members to request exclusion from, or object to, the Settlement.

**12.3.**    Each of the attorneys executing this Stipulation, any of its exhibits, and any related settlement documents on behalf of any Party hereto hereby warrants and represents that he or she has been duly empowered and authorized to do so by the Party he or she represents, respectively.

**12.4.**    Plaintiffs and Lead Counsel represent and warrant that Plaintiffs are Settlement Class Members and none of Plaintiffs' claims or causes of action against one or more Defendants in the Action, or referred to in this Stipulation, or that could have been alleged against one or more Defendants in the Action have been assigned, encumbered or in any manner transferred in whole or in part.

**12.5.**    This Stipulation, together with the Supplemental Agreement, constitutes the entire agreement between the Parties related to the Settlement and supersedes any prior agreements. No representations, warranties, promises, inducements, or other statements have been made to or relied upon by any Party concerning this Stipulation, other than the representations, warranties and covenants expressly set forth herein and in the Supplemental Agreement. Plaintiffs, on behalf of themselves and the Settlement Class, acknowledge and agree that any and all other representations

EXECUTION VERSION

and warranties of any kind or nature, express or implied, are specifically disclaimed and were not relied upon in connection with this Stipulation. In entering this Stipulation, the Parties relied solely upon their own knowledge and investigation. Except as otherwise provided herein, each Party shall bear his or its own costs.

12.6.    This Stipulation may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties, or their respective counsel or their respective successors in interest.

12.7.    This Stipulation shall be binding upon, and shall inure to the benefit of, the Parties and their respective agents, successors, executors, heirs, and assigns.

12.8.    The Releasees who do not appear on the signature lines below, are acknowledged and agreed to be third party beneficiaries of this Stipulation and Settlement.

12.9.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

12.10.   This Stipulation may be executed in any number of counterparts by any of the signatories hereto and the transmission of an original signature page electronically (including by facsimile or portable document format) shall constitute valid execution of the Stipulation as if all signatories hereto had executed the same document. Copies of this Stipulation executed in counterpart shall constitute one agreement.

12.11.   This Stipulation, the Settlement, the Supplemental Agreement and any and all disputes arising out of or relating in any way to this Stipulation, whether in contract, tort or otherwise, shall be governed by and construed in accordance with the laws of the State of New Jersey without regard to conflict of laws principles.

EXECUTION VERSION

**12.12.**   The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and all parties hereto submit to the jurisdiction of the Court for the sole purposes of implementing and enforcing the Settlement embodied in this Stipulation.  For the avoidance of doubt, in the event the Settlement is terminated otherwise fails to become effective, Defendants' personal jurisdiction defenses shall be preserved.

**12.13.**   Prior to filing any action with respect to the enforcement of the Settlement, the Parties' dispute(s) shall be promptly submitted for non-binding mediation before Mr. Jed Melnick of JAMS.

**12.14.**   The Stipulation shall not be construed more strictly against one party hereto than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties, and all Parties have contributed substantially and materially to the preparation of this Stipulation.

**12.15.**   Plaintiffs, Lead Counsel, and the attorneys, staff, experts, and consultants assisting them in the Action agree that (a) they will not intentionally assist or cooperate with any person or entity in the pursuit of legal action related to the subject matter of the Action against the Releasees, (b) they will not intentionally assist or cooperate with any person or entity seeking to publicly disparage or economically harm the Releasees with respect to any matter relating to the subject matter of the Action, and (c) they will not discuss any confidential matters related to the Action or the Settlement with anyone. Defendants and Defense Counsel agree that (a) they will not intentionally assist or cooperate with any person or entity in the pursuit of legal action related to the subject matter of the Action against Plaintiffs, Settlement Class Members, and Lead Counsel, , (b) they will not intentionally assist or cooperate with any person or entity seeking to publicly

DocuSign Envelope ID: D90E3C0A-5854-4115-AB96-64724975400F

EXECUTION VERSION

disparage or economically harm Plaintiffs, Settlement Class Members, and Lead Counsel with respect to any matter relating to the subject matter of the Action, and (c) they will not discuss any confidential matters related to the Action, or the Settlement with anyone.

**12.16.**   All agreements by, between or among the Parties, their respective counsel and their other advisors as to the confidentiality of information exchanged between or among them shall remain in full force and effect, and shall survive the execution and any termination of this Stipulation and the final consummation of the Settlement, if finally consummated, without regard to any of the conditions of the Settlement.

**12.17.**   The Parties shall not assert or pursue any action, claim or rights that any party violated any provision of Rule 11 of the Federal Rules of Civil Procedure, any corollary state law rule or statute, and/or the Private Securities Litigation Reform Act of 1995 ("PSLRA") in connection with the Action, the Settlement, the Stipulation, or the Supplemental Agreement. The Parties agree that the Action was resolved in good faith following arm's-length bargaining, in full compliance with applicable requirements of good faith litigation under the Securities Exchange Act of 1934, Rule 11 of the Federal Rules of Civil Procedure, any corollary state law rule or statute, and/or the PSLRA.

**12.18.**   Any failure by any of the Parties to insist upon the strict performance by any other Party of any of the provisions of the Stipulation shall not be deemed a waiver of any of the provisions hereof, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Stipulation to be performed by the other Parties.

**12.19.**   The waiver, express or implied, by any Party of any breach or default by any other Party in the performance of such Party of its obligations under the Stipulation shall not be deemed

DocuSign Envelope ID: D90E3C0A-5854-4115-AB96-64724975400E

EXECUTION VERSION

or construed to be a waiver of any other breach, whether prior, subsequent, or contemporaneous, under this Stipulation.

**12.20.** The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Stipulation.

**IN WITNESS WHEREOF**, the Parties have executed this Stipulation by their undersigned counsel effective as of the date set forth below.

Dated:  March 9, 2021

**THE ROSEN LAW FIRM, P.A.**

By: _Laurence Rosen_
DocuSigned by:
85161SDF92D9448...

Laurence M. Rosen
One Gateway Center, Suite 2600
Newark, NJ 07102
Tel: (973) 313-1887
Fax: (973) 833-0399
Email: lrosen@rosenlegal.com

and

Brent J. LaPointe (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: blapointe@rosenlegal.com

*Lead Counsel for Plaintiffs and the Putative Class*

DocuSign Envelope ID: D90E3C0A-5854-4115-AB96-64724975400E

EXECUTION VERSION

Dated:  March 9, 2021

**HARTMANN DOHERTY ROSA
BERMAN & BULBULIA, LLC**

By: _____
Mark A. Berman, Esq.
Robin D. Fineman, Esq.
433 Hackensack Avenue, Suite 1002
Hackensack, NJ 07601
Tel: (201) 441-9056

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Richard A. Rosen, Esq. (pro hac vice)
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Email: rrosen@paulweiss.com

*Counsel for Defendants Katanga Mining Limited,
Johnny Blizzard, Jacques Lubbe, Matthew Colwill,
Liam Gallagher, and Tim Henderson*

EXECUTION VERSION

Dated: March 9, 2021

**BROWN & CONNERY, LLP**

By: _(signature)_

Susan M. Leming, Esq.
360 Haddon Avenue
Westmont, NJ 08108
Tel: (856) 854-8900
Email: sleming@brownconnery.com

**WILMER CUTLER PICKERING HALE AND
DORR LLP**

Michael G. Bongiorno, Esq. (pro hac vice)
David S. Lesser, Esq. (pro hac vice)
Jamie S. Dycus, Esq. (pro hac vice)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Tel: (212) 230-8800
Email: michael.bongiorno@wilmerhale.com
Email: david.lesser@wilmerhale.com
Email: jamie.dycus@wilmerhale.com